UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| WILLIAM RIVERA | ) | |
| --- | --- | --- |
| Plaintiff, | ) | |
| v. | ) | 19 C 3728 |
| TOWN OF CICERO, *et al.*, | ) | |
| Defendants. | ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendants' motion to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion is granted in part and denied in part.

# BACKGROUND

For purposes of this motion, the Court accepts as true the following facts from the complaint. *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). All reasonable inferences are drawn in Plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Plaintiff William Rivera ("Rivera"), an Illinois resident, is a privately employed process server. Defendant Town of Cicero is an Illinois municipal corporation. Defendants Armando Galvin ("Galvin"), Kane, Perez, Andrew Gutierrez ("Gutierrez"),

Charles Sierra ("Sierra"), J. Koseneski ("Koseneski"), Edgar Alba ("Alba"), and Lara, are all Officers with the Cicero Police Department. Defendant Salvador Orozco ("Orozco") is a detective in the same Department. Defendant Christopher Wojtowicz is the Captain of the Cicero Police Department (collectively, "Defendants").

On June 7, 2018, Rivera was attempting to serve a federal subpoena upon Larry Dominick ("Dominick"), the President of Cicero, and Ruth Ortega ("Ortega"). While driving, Rivera was pulled over by Cicero Police Officers Kane and Galvin. Officer Kane approached Rivera's driver-side door and asked for Rivera's driver's license. Rivera asked why he was pulled over, but Kane did not respond.

Kane saw Rivera's badge and asked whether he was a police officer. Rivera answered that he was not a police officer but a process server. Kane asked to see the badge, and Rivera handed it to him. Kane asked Rivera whether he worked for Cook County. Rivera said no, but he mentioned that he took process serving courses in Cook County, and they provided him with the badge.

Kane asked Rivera who he was serving and whether Kane could see the document. Rivera told Kane that he was trying to serve Dominick. Kane asked Rivera who sent him, but Rivera did not respond. Kane informed Rivera that he was not authorized to serve the subpoena because he did not work for Cook County. Rivera tried to explain that he was a private process server and told Kane that he had a Permanent Employee Registration Card ("PERC"). Kane asked for the card and took the card, Rivera's badge, and driver's license to the squad car.

2

Officer Galvin approached Rivera's driver-side door and told him to stay in the car. About ten minutes later, two additional police cars arrived at the scene. Rivera alleges that one of the new officers was "a captain or sergeant in a white shirt with three stripes, [who] proceeded to ask Rivera the same questions" asked by Kane. The sergeant then walked away with the other officers and left.

At this point, only Officers Kane, Galvin, and Perez were present at the scene. About five minutes later, another police car arrived, and "a tall Hispanic officer arrived and spoke with the other officers but did not approach Rivera." Shortly after that, "a short, chubby, Caucasian officer pulled up in a Town of Cicero police car." The Caucasian Officer reviewed Rivera's documents and then approached him with Officer Kane. The Caucasian Officer asked Rivera why he was serving subpoenas when he did not work for Cook County and asked why he was serving Ortega. The Caucasian Officer also asked why Rivera was trying to serve Dominick when he is the President of Cicero.

Rivera responded that he was a private process server, and his job requires him to serve legal documents such as subpoenas and evictions. He noted that his job did not require him to know why the individuals were being served, and he did not know why they were being served.

Around 2:10 p.m., another police car arrived with two additional officers. Rivera alleges that "[o]ne of the newly arrived young, Hispanic officers approached [the vehicle] and ordered him out of the [car]." Rivera exited his car and was ordered to

3

walk to the back of his car. The Officer asked Rivera whether he carried a gun and Rivera said no. The Officer then received Rivera's driver's license, badge, PERC card, and papers from Officer Kane. The Officer walked away while talking on a cell phone as he examined Rivera's documents. The Officer returned and asked Rivera what he was doing there. Rivera repeated the answers he gave to the other officers. The Officer put Rivera's badge in his pocket, handed the other documents back to Officer Kane, and left to investigate Rivera.

Rivera then alleges that Officer Ramirez arrested him. Rivera was not given a reason for his arrest and was not Mirandized. Officer Kane handcuffed Rivera and took him to the squad car for transportation back to the Cicero Police station. As they were leaving, Rivera alleges he saw Ramirez search his car.

At the Police Station, Rivera was processed for his fingerprints and mugshot. Rivera alleges that the processing officer was rough and insulted him by calling him "stupid." After processing Rivera, the processing officer "tightly cuffed [his] left hand, pressing into [his] bone."

Rivera was next transported to a single cell. He alleges that he was pushed into the cell and had to place his hands on the window to be uncuffed. The transporting officer pulled on Rivera's arms and roughly removed the handcuffs. Rivera allegedly "saw Officer Galvin shaking his head" when he was in the cell. Rivera further alleges that Officer Rodriguez told him he would be "investigated in an hour, not too late but soon."

According to Rivera, "the air conditioning in the cell caused the temperature to be freezing." When Rivera asked the officers to lower the air conditioning or place him in a warmer cell, they refused. After this interaction, Rivera alleges that the cell became even colder. Rivera asked for a lawyer but was denied and told that he needed to be processed first. As time passed, Rivera alleges that the cell remained freezing, and he "fell to the floor trembling." Rivera further alleges that the officers walked by and did nothing.

On June 8, 2018, at approximately 1:35 a.m., Rivera alleges he was taken to an interrogation room and that two officers, including Officer Ramirez, laughed at him as he was being removed from the cell. In the interrogation room, Rivera was provided with his Miranda Rights on a piece of paper. He was told to read and sign. Rivera asked for an attorney again and was denied.[1]

Rivera then asked why he was being held, and the officers informed him that he was being charged with theft. They told him that there was a video of him stealing a package from one of the addresses where he tried to serve Dominick. Rivera asked to see the video but was instead shown two still photographs of a house. After Rivera challenged the officers as to whether they had proof of him stealing, they threatened him with felony charges for not being a Cook County process server and stealing. They

---

[1] The allegations in the complaint are in passive voice, leaving the actor unknown. But Rivera's response brief clarifies that the two officers involved in his interrogation were officers Gutierrez and Orozco.

told him that they will get a search warrant for his house and that they will argue the stolen items were already sold if they did not find them at his house.

Rivera then signed a confession regarding the stolen items, allegedly under duress from repeated threats of elevating the charges and returning him to a freezing cell. The Officers gave Rivera a phone and told him to call his wife to let her know that they were coming over shortly. The officers told Rivera that if his wife provided them with any item, the charge would remain a misdemeanor. But if they returned to the department empty-handed, then the charge would be a felony. Rivera complied with the officers' demands.

Rivera alleges, upon information and belief, that the officers arrived at his house early in the morning and woke up the entire house. There were two Cicero Police officers at the door. They did not show a warrant or their badges, but they provided Rivera's wife with a document to sign. Rivera alleges the document was written in English, and his wife had limited English proficiency and could not read. The officers then pushed their way into Rivera's house, into his living room, asking questions about Rivera and his family. They looked around the house and told Mrs. Rivera that they must return with something.

Around noon on June 8, 2018, Rivera was allowed out of the cell. An officer told him that he is lucky for not getting a felony charge for illegally attempting to serve a subpoena while not being a Cook County officer. Shortly after that, an officer told Rivera he was given bond. Rivera alleges that not all his items were returned upon

release, and his car was missing items, including the subpoenas and legal papers he tried to serve, his cell phone charger, and $40 in gas money that he kept in the center counsel.

On June 4, 2019, Rivera filed suit against the Town of Cicero, and Officers Galvin, Kane, Perez, Gutierrez, Sierra, Koseneski, Alba, Lara, Captain Wojtowics, Detective Orozco, Deputy Police Superintendent Schullo and Unknown Town of Cicero Police Officers. Counts I through IV of the complaint assert claims under 42 U.S.C. § 1983; Counts V through VIII assert state-law claims.

Count I of Rivera's complaint alleges Unlawful Search and Seizure claims. Counts II and V allege False Arrest and Imprisonment claims under § 1983 and Illinois law, respectively. Count III alleges Excessive Force claims. And Count IV alleges Failure to Intervene Claims. Count VI alleges a state law indemnification claim against the Town of Cicero. Count VII alleges an Intentional Infliction of Emotional Distress claim and, in the alternative, Count VIII alleges Negligent Infliction of Emotional Distress claims against all defendants. On September 11, 2019, Defendants filed a Rule 12(b)(6) motion to dismiss all counts, except for Counts I, V, VII, and VIII as asserted against Officers Kane and Galvin. Defendants move to dismiss Rivera's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the complaint must set

forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiffs need not provide detailed factual allegations but must provide enough factual support to raise their right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A claim must be facially plausible, meaning that the pleadings must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claim must be described "in sufficient detail to give the defendant 'fair notice of what the…claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a 12(b)(6) motion to dismiss. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Generally, Defendants base their motion on four grounds: (1) Rivera fails to allege their personal involvement in the constitutional violations alleged in Counts I, II, III and IV; (2) Count II is duplicative of Count I; (3) handcuffing an arrestee is not by itself enough to state a claim for excessive force in Count III; and (4) Counts V, VII, and VIII should be dismissed once the federal claims are dismissed. The Court will address each argument in turn.

Section 1983 provides a private right of action to remedy violations of constitutional and federal statutory rights committed under color of law. 42 U.S.C. §

1983. To state a claim under § 1983, a plaintiff must allege that he was "'deprived of a right secured by the Constitution or federal law, by a person acting under color of law.'" *Heyde v. Pittenger*, 633 F.3d 512, 516 (7th Cir. 2011) (*quoting Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007)).

## I. Personal Involvement in Counts I, II, III and IV

It is well established in this circuit that a plaintiff asserting claims under 42 U.S.C. § 1983 must allege that each defendant was personally involved in the alleged constitutional deprivation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995). To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. *Laba v. Chicago Transit Auth.*, 2015 WL 3511483, at *2 (N.D. Ill. 2015).

### A. Count I: Unlawful Search and Seizure

In Count I, Rivera alleges Defendants conducted several unlawful searches and seizures when they stopped him; searched his person, car, and later on his home; and arrested him. Defendants Perez, Gutierrez, Sierra, Koseneski, Alba, Lara, Orozco, and Wojtowicz (collectively, "Individual Defendants") move to dismiss Count I because Rivera fails to allege their personal involvement in the events leading to these alleged violations.

### i. *Investigatory Stop*

Rivera alleges that Officers Kane and Galvin pulled him over and questioned him about his attempt to serve the President of Cicero. Individual Defendants argue

this claim fails as asserted against them because Rivera fails to allege their personal involvement with the stop. The Court agrees.

Except for Officers Galvin and Kane, Rivera does not allege that any one of the individual officers were present at the time the stop was made. Rather, he alleges that a captain or sergeant in a white shirt with three stripes, along with two Hispanic officers and a short chubby Caucasian officer arrived at the scene after the stop. Even if such descriptions were sufficient to identify the individually named defendants, the allegations are insufficient to show the named officers knew of the stop, facilitated, approved, or turned a blind eye to it *before it happened*. *See Marshall v. Buckley*, 644 F. Supp. 2d 1075, 1080 (N.D. Ill. 2009) (a plaintiff "must plead personal involvement of *each* Defendant to properly state a claim under Section 1983.") (emphasis added).

Because there are no allegations that the Individual Defendants knew of the stop or were present before it was made, Rivera's allegations fail to show they facilitated, approved, condoned, or ignored it. Accordingly, the Court finds Rivera fails to allege that the Individual Defendants were personally involved in the stop.

    ii.    Pat-down Search

During the stop, Rivera alleges that one of the two newly arrived young Hispanic officers approached his car, asked him to step out, and conducted a pat-down search. Like the allegations with the stop, such descriptions are insufficient to link any of the individually named officers to the pat-down search.

Rivera does not even allege which officers are of Hispanic descent, and his vague descriptions are not sufficient for the Court to draw an inference as to which Defendants are of such descent and fit the vague descriptions in his complaint. Because these allegations do not show who, if any, of the Individual Defendants were present, condoned, or overlooked the pat-down search, the Court finds that Rivera fails to allege the Individual Defendants were personally involved in this search.

      iii.     *Car Search*

Rivera next alleges that Officer Ramirez—who is not a named Defendant—conducted an unlawful car search as Officer Kane drove Rivera to the Cicero police station. Like his allegations about the pat-down search and stop, Rivera does not sufficiently allege that any of the Individual Defendants were present, condoned, or overlooked Ramirez's car search. Accordingly, Rivera fails to allege the Individual Defendants were personally involved in the unlawful car search.

      iv.     *Home Search*

Rivera finally alleges Defendants conducted a warrantless search of his home. While Rivera fails to make any allegations in the complaint that can be used to identify the officers personally involved in the search of his home, his response brief alleges that Officers Gutierrez and Orozco interrogated him and subsequently searched his home. These allegations are sufficient to satisfy the personal involvement requirement for Officers Gutierrez and Orozco. *Help At Home, Inc. v. Med. Capital, L.L.C.*, 260 F.3d 748, 753 (7th Cir.2001) (holding plaintiffs may add additional facts in

11

their response to a motion to dismiss if "the facts are consistent with the allegations of the complaint."); *see also Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1037 (7th Cir.2012).

For Officers Gutierrez and Orozco, Defendants make an alternative argument that Rivera's allegations concerning the search of his home are not sufficient to make out a section 1983 claim against them. The Court disagrees.

To state a claim under § 1983 for an unlawful search or seizure, a plaintiff must allege that the conduct constituted a search or seizure and that the search or seizure was unreasonable under the circumstances. *See Bielanski v. County of Kane*, 550 F.3d 632, 637 (7th Cir. 2008). Rivera alleges that Orozco and Gutierrez arrived at his home early in the morning, did not show a warrant, and pushed their way into Rivera's living room where they questioned his family. Assuming these allegations are true, they are sufficient to state a 1983 claim against Officers Orozco and Gutierrez for an unlawful search of Rivera's home. *United States v. Bennett*, 908 F.2d 189, 192 (7th Cir. 1990) ("A warrantless search or seizure is 'per se unreasonable unless the police can show that it falls within one of a carefully defined set of exceptions.'") (*quoting Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971)). Accordingly, the Court finds Rivera sufficiently alleges a claim against Officers Gutierrez and Orozco for an unlawful search of his home.

That said, Rivera does not allege that any of the other officers were personally involved in the search of his home. Accordingly, the Court finds Rivera failed to sufficiently allege that the Individual Defendants, except Officers Gutierrez and

Orozco, were personally involved in the search of his home. Therefore, Count I is dismissed as to the Individual Defendants, except for Officers Gutierrez and Orozco, for failure to allege their personal involvement in any of the alleged searches.

**B. Count II: False Arrest/Imprisonment**

In Count II, Rivera asserts that Defendants violated his constitutional rights by arresting him without reasonable grounds to believe that he committed an offense. Specifically, Rivera alleges that he was arrested after the pat-down by Officer Ramirez and that Officer Kane handcuffed and transported him to the police station. Defendants, including Kane and Galvin, argue Count II should be dismissed because it is duplicative of Count I. In the alternative, the Individual Defendants argue Count II should be dismissed because it fails to allege their personal involvement in Rivera's arrest. The Court will address each argument in turn.

*i. Duplicative Counts.*

Defendants argue Count II alleges a violation arising from the same seizure as Count I. The Court disagrees. Counts I and II allege two separate seizures: Count I explicitly alleges an unlawful seizure arising from an unlawful stop, while Count II alleges an unlawful seizure arising from Rivera's arrest. *Compare* 1:19-cv-03728, Dkt. No. 1 at ¶¶ 106-108 *with* ¶¶ 109-112.

Defendants' position on this issue is simply meritless. It is well-settled law that seizures fall into two categories, "brief investigatory stops, known as *Terry* stops; and full custodial arrests." *Williams v. City of Champaign*, 2007 WL 522184, at *10 (C.D.

13

Ill. 2007), *aff'd*, 524 F.3d 826 (7th Cir. 2008). Thus, Defendants cannot seriously contend Rivera was seized while already seized just because he was stopped before being arrested. Nevertheless, Defendants attempt to rely on *Swanigan v. City of Chicago* to support their position. 881 F.3d 577, at 584 (7th Cir. 2018).

In *Swanigan*, the plaintiff tried to allege that his coerced participation in a line-up was a seizure within a seizure, but the Seventh Circuit held that "[b]eing placed in a lineup *while in custody* 'does not curtail a person's freedom of action' because he has already lost that freedom." *Id.* (*quoting Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989)) (emphasis added). Unlike *Swanigan*, Rivera was not in custody by virtue of the traffic stop; he was placed into custody only upon his arrest and thus was not seized within an existing seizure. *Maryland v. Shatzer*, 559 U.S. 98, 113, 130 (2010) ("[T]he temporary and relatively nonthreatening detention involved in a traffic stop or Terry stop does not constitute Miranda custody."). Accordingly, the Court finds Count II is not duplicative of Count I.

### ii. Personal Involvement.

In the alternative, Individual Defendants argue that Count II should be dismissed because Rivera fails to allege their personal involvement in Rivera's arrest. The Court agrees.

Aside from Officers Galvin, Kane, and Ramirez, Rivera's allegations are insufficient to show who knew of or was involved in his arrest. Further, Officer Ramirez is not named as a Defendant in this case. Accordingly, the Court finds Rivera

14

failed to sufficiently allege the Individual Defendants were personally involved in his arrest.

Count II is dismissed as to the Individual Defendants, but not as to Officers Galvin and Kane.

### C. Count III: Excessive Force

In Count III, Rivera asserts that Defendants used excessive force while processing and detaining him at the Cicero Police Station. Rivera alleges that the officer who processed him tightly cuffed his left hand, pressing the cuffs into his bone. Rivera further alleges that he was repeatedly pushed around, shoved, and left in a cold jail cell, and Defendants refused to place him in a warmer cell or turn down the cell's air conditioning. Defendants argue Count III should be dismissed because Rivera fails to sufficiently allege that any of the Defendants named in this complaint were personally involved in the use of excessive force at the police station. The Court agrees.

Assuming arguendo that the alleged events rise to the level of excessive force, Rivera neither names nor describes the processing officers who tightly cuffed him, shoved him in a cold jail cell, or refused to turn down the air conditioning. Rivera's only allegation surrounding this event was that Officer Galvin was shaking his head when Rivera was in the cell, but does not provide any factual context for this allegation. Rivera's allegations do not make clear what Officer Galvin was witnessing while shaking his head, if anything. Thus, Rivera fails to allege facts showing that any of the

Defendants knew about the conduct and facilitated, approved, or turned a blind eye to it.

As to allegations about the cell's conditions, Rivera only alleges that the cell was freezing, that the officers refused to lower the air condition and refused to place him in a warmer cell. Again, even if these events rose to the level of excessive force, Rivera does not allege facts showing any of the Defendants knew of the conduct and facilitated, approved, or turned a blind eye to it. As such, the Court finds Rivera failed to sufficiently allege that Defendants were personally involved in the use of excessive force.

For these reasons, Count III is dismissed as to all Defendants.

**D. Count IV: Failure to Intervene**

In Count IV, Rivera asserts Defendants failed to prevent the violations of his rights alleged in Counts I through III. He alleges that some Defendants failed to intervene to prevent his mistreatment, improper stop, and fictitious charges. He further alleges that other Defendants failed to intervene to prevent the use of excessive force against him.

To state a claim for failure to intervene under § 1983, a plaintiff must plead that the law enforcement officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009). "A realistic opportunity to intervene may exist whenever an

officer could have called for a backup, called for help, or at least cautioned [the excessive force defendant] to stop." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (internal quotation marks omitted) (*citing Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994)). *Campbell v. City of Chicago*, 2018 WL 4352614, at *5 (N.D. Ill. 2018). Here too, "§ 1983 liability is premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow*, 678 F.3d 552, 556 (7th Cir. 2012). Defendants urge the Court to dismiss Count IV because Rivera fails to establish an underlying constitutional violation and fails to identify which officers had an opportunity to intervene but did not.

The Court agrees that Rivera does not sufficiently identify the officers who failed to intervene in the alleged violations. Rivera's sweeping allegations concerning all Defendants are insufficient to allege that the Defendants were personally involved. *See, e.g., Brown v. Illinois Dep't of Public Aid*, 318 F. Supp. 2d 696, 700 (N.D. Ill. 2004) (dismissing Section 1983 claim where the plaintiff's allegations were "made generally against all defendants, failing to allege the 'element of personal involvement necessary to individual liability under § 1983.' ").

Accordingly, Count IV is dismissed as to all Defendants.

## IV. Counts V, VII and VIII: State Law Claims

Except for Rivera's unlawful search claims against Defendants Orozco and Gutierrez, the Court has dismissed Rivera's federal claims against the remaining Individual Defendants, and only his state-law claims remain. According to 28 U.S.C.

§ 1367(a), federal courts have supplemental jurisdiction over claims that arise out of the "same case or controversy" as a claim over which the court has original jurisdiction. A district court "may decline to exercise supplemental jurisdiction over pendent state-law claims if the court has dismissed all claims over which it has original jurisdiction." *Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1250–51 (7th Cir. 1994) (internal quotation marks omitted), citing 28 U.S.C. § 1367(c)(3). The Seventh Circuit has adopted the general rule that "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Id*. at 1251.

Having dismissed Rivera's federal claims against the Individual Defendants, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims as asserted against the Individual Defendants. Accordingly, Counts V, VII, and VIII are dismissed as to the Individual Defendants except for Defendants Gutierrez and Orozco, against whom a federal claim for unlawful search remains pending.

## **CONCLUSION**

For the reasons mentioned above, the Court grants in part and denies in part the Defendants' motion to dismiss. As to Officers Galvin and Kane, the Court dismisses Counts III and IV. As to Officers Gutierrez and Orozco, the Court dismisses Counts II, III and IV. As to the remaining Individual Defendants, the Court dismisses Counts I, II, III, IV, V, VII, and VIII. The Court grants Rivera's motion for leave to amend, and he has 30 days to file an amended complaint. It is so ordered.

Dated: 10/23/2019 _____
Charles P. Kocoras
United States District Judge